## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MIHAELA BILIOVSCHI SMITH,
    2160 Freetown Pl., Apt. 42
    Dulles, VA 20189-2160

    Plaintiff,

        v.

MICHAEL RICHARD POMPEO,           C.A. No. 18-3065
SECRETARY, UNITED STATES
DEPARTMENT OF STATE
    2201 C Street, NW
    Washington, D.C. 20520

SERVE:

    U.S. Attorney for the District of
    Columbia
    Attn: Civil Process Clerk
    555 4th St., N.W.
    Washington, D.C. 20001

and

    Matthew G. Whitaker
    Acting Attorney General for the
    United States
    950 Pennsylvania Ave., N.W.
    Room 511
    Washington, D.C. 20530

and

    Michael Richard Pompeo
    Secretary, U.S. Department of State
    Attn: Executive Office, Office of Legal
    Adviser (L/EX)
    600 19th St., N.W. Suite 5.600
    Washington, D.C. 20522

    Defendant.

## COMPLAINT

### (Discrimination and Retaliation in Federal Employment)

Mihaela Biliovschi Smith hereby sues Michael R. Pompeo, Secretary, United States Department of State, for discrimination on the basis of national origin and gender, and retaliation in federal employment.

### Jurisdiction

1.     This Court has jurisdiction over this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 and 42 U.S.C. § 2000e-3.

### Venue

2.     Venue properly lies in this Court under 28 U.S.C. § 1391(e)(2) and 42 U.S.C. § 2000e-5(f)(3).  The discriminatory acts occurred in Yaounde, Cameroon at the U.S. Embassy and in Washington, DC.  The principal office of the U.S. Department of State is in Washington, DC. Employment records relevant to the matter are maintained and administered in Washington, DC.

### Exhaustion of Administrative Remedies

3.     Plaintiff has exhausted her administrative remedies prior to filing this law suit. Pursuant to federal regulations, plaintiff timely initiated an informal complaint of discrimination and reprisal on April 25, 2015, and a formal complaint on May 21, 2015.  The U.S. Department of State issued a final order on Plaintiff's formal complaint on May 15, 2018.  Plaintiff timely filed an administrative appeal of that order to the U.S. Equal Employment Opportunity Commission's Office of Federal Operations.  The Equal Employment Opportunity Commission's Office of Federal Operations issued a decision on the appeal on September 25, 2018.  Plaintiff

received the decision on September 28, 2018. Plaintiff did not seek reconsideration of the decision and thus it became a final administrative decision. This suit is filed within 90 days of Plaintiff's receipt of that decision.

<u>Parties</u>

4.      Plaintiff Mihaela Biliovschi Smith is female, of Romanian national origin, and a citizen of the United States. She currently lives at the U.S. Embassy in Freetown, Sierra Leone as her husband is stationed there as a Foreign Service Officer with the U.S. State Department. At the time of events relevant to this suit, Ms. Biliovschi Smith was employed by the U.S. Department of State. Plaintiff was hired by Defendant as a Media Outreach Assistant at the U.S. Embassy facility in Yaoundé, Cameroon.

5.      Defendant, the Secretary of State of the U.S. Department of State, is sued in his official capacity only.

<u>Factual Basis of the Complaint</u>

6.      Plaintiff's husband, Derrin Smith, is a Foreign Service Officer employed by Defendant. At the time relevant to this complaint, Mr. Smith was stationed in Yaoundé, Cameroon. Plaintiff applied and was selected for a position as a Media Outreach Assistant under the State Department's Eligible Family Member appointment authority. She began working in that position on March 9, 2015.

7.      Due to illegal prejudices held by management about Plaintiff because of her national origin, Defendant discriminated against her with respect to her pay rate. Later, prejudice regarding her national origin and gender caused management to dismiss her concerns when she was harassed and threatened by another manager. When she objected to this treatment, she was

3

subjected to retaliation.

8.      During her application process, management in Yaoundé learned that Ms. Biliovschi Smith was born in Romania.  They began immediately applying negative stereotypes to her based on her national origin, making pronouncements that she was paranoid and conspiratorial because of her "Romanian mindset" and "Balkan perspective."  This impermissible stereotyping tainted all of management's interactions with Ms. Biliovschi Smith. Managers minimized and ignored her subsequent complaints of sex-based harassment.  Instead of responsibly conducting an investigation about her concerns, they dismissed her valid complaints as being part of a "pattern" of her "finding enemies," and retaliated against her for opposing discriminatory practices and engaging in protected EEO activity.

9.      The Deputy Chief of Mission (DCM), Gregory Thome, made disparaging comments about Complainant's national origin.  For example, on October 22, 2014, Ms. Biliovschi Smith was asked by a guest at an official dinner about her accent, and she responded that she was from Romania. Thome interrupted and said that Ms. Biliovschi Smith's "country right now is the United States of America" and "at the State Department, we don't work for the interests of the Romanians."

10.     During an Embassy fire drill in early 2015, Thome asked Ms. Biliovschi Smith out of the blue if she "spoke Russian."  Ms. Biliovschi Smith answered that she did not. She took this as a direct reference to her national origin.  Ms. Biliovschi Smith was concerned by this comment because she had previously been accused by the State Department of being a Russian spy and was told that Romania was a "hostile country of concern."

Discrimination in Pay

11.     The managers in Yaoundé set Plaintiff's pay at the Grade FP-06, Step 1 level.

Prior to her start date, Plaintiff was informed by Embassy Human Resources employee Susie

Begne that Plaintiff's knowledge and experience would qualify her for a higher step and pay.

Before starting the job, Plaintiff requested a Superior Qualifications Review (SQR), which is the

process through which the State Department may grant a higher step to an employee who has

unusually high and unique qualifications or prior work experience.  The managers and human

resource manager in Yaoundé refused to submit the request to headquarters, and Plaintiff was

denied an SQR review.

12.     Defendant's refusal to process the SQR was due to national origin discrimination.

The reasons given by Defendant were shifting, and were pretext for discrimination.  On March 9,

2015, Charles Morrill, the Management Officer for Post, told DCM Gregory Thome that

although Plaintiff qualified for a Step 4 or 5 based on her "extensive experience,"  Morrill did not

want Thome to forward the SQR to headquarters because, Morrill said, it would delay Plaintiff's

start date.  However, any delay would have been minimal.

13.     Morrill recommended instead that they inform Plaintiff that an SQR "will not be

possible" and that he should be the one to break the news to her because, "from [his] time in the

Balkans," he understood her "perspective."

14.     Morrill elaborated that Plaintiff's "perspective," because of her national origin,

was that people were "out to get [her]."  He stated, "Not that I'm an expert on Albania or of

Eastern European culture, but I also have very close friends who are Romanian, and I know the

mindset. . . . I think I understand the mindset having worked with people from Eastern Europe --

5

European countries with a different mindset. . . . I believe that, given the history of communism and fascism, there tends to be a world view that -- that people are out to get you."

15.     Morrill told Plaintiff that State Department officials in Washington, DC had already set the pay grade and step for her and had refused the SQR.  In fact, the Post managers had set the pay grade and step and had refused to submit the SQR.  After Ms. Biliovschi Smith questioned why she would not receive an SQR, Morrill threatened that they would "cancel" her job altogether if Ms. Biliovschi Smith pursued the matter.

16.     Because Plaintiff did not receive an SQR, her pay rate remained at the Grade FP-06, Step 1 level.  Had she received the SQR, she would have likely been paid at the Step 5 level as of March 2015.   Over time, she also would have received additional step increases that would have increased her pay.  Plaintiff was discriminated against each day after March 2015 that she was not paid at the appropriate pay level.

Hostile Work Environment and Retaliation

17.     Plaintiff was also subjected to a hostile work environment based upon her sex and national origin, and in retaliation for her protected EEO activity.

18.     In April 2015, Plaintiff reported threatening behavior toward her by a male IT manager, Ali Mokhtare.  Management minimized her complaints and blamed her instead.  Again viewing her as paranoid, they reported her to State Department psychiatrists, and refused to take any action to protect her.

19.     When Plaintiff discovered and reported that the same manager had previously been accused of and had admitted to sexual assault of a female contractor in Iraq, management falsely insisted that he had been exonerated and refused to do anything about it.

20.     Because of Defendant's decision to continue to employ the male manager despite

his misconduct in Iraq, Defendant failed to protect Plaintiff from harassment by this manager.

Further, Defendant's failure to adequately investigate Plaintiff's complaint resulted in her being

required to continue working with a sexual perpetrator, who terrified her.  He stalked her, glared

at her, and created a hostile working environment.  Even after Plaintiff reported the hostile work

environment, management took no action and Mokhtare remained in his management position

until he left Post in or around October of 2015.

21.     On Friday, April 3, 2015, IT manager Ali Mohktare threatened Ms. Biliovschi

Smith.  That evening, Mohktare called Derrin Smith, Ms. Biliovschi Smith's husband. During

the phone call, Mohktare sounded inebriated and angry, telling Mr. Smith that he "would not

tolerate any more crap" from Ms. Biliovschi Smith.  Ms. Biliosvschi Smith became frightened.

Mr. Smith filed an incident report on the matter on Monday, April 6, 2015.  Unbeknownst to Ms.

Biliovschi Smith and Mr. Smith, Mohktare had also reported the incident to DCM Thome,

providing information that conflicted with what was reported by Mr. Smith.

22.     On April 6, 2015, Thome met with Ms. Biliovschi Smith and Mr. Smith.  Without

conducting any investigation of the matter, Thome accused Ms. Biliovschi Smith of "bullying,"

engaging in a "continuum of violence," and being "confrontational" toward Mohktare.  Thome

also implied that Ms. Biliovschi Smith had sexually harassed Mokhtare, but did not elaborate on

why he thought this was the case.  The Regional Security Officer, who was also in that meeting,

disagreed with Thome.  Triggered and offended, Ms. Biliovschi Smith left the room, sobbing

uncontrollably, while Thome yelled for her to return.

23.     The next day, instead of initiating a management investigation into Mokhtare's

threatening and inebriated behavior, Thome contacted the regional psychiatrist, Dr. Andrea Ross, to report Plaintiff as a "paranoid" and "disruptive" employee.  Thome also alleged Plaintiff was engaged in "workplace violence" and "creating a hostile work environment."

24.     Thome conducted no investigation into Ms. Biliovschi Smith's complaints about Mokhtare's threat, nor did he make any attempt to keep Mokhtare out of Ms. Biliovschi Smith's workplace.  Instead, he blamed the Smiths, and told them to avoid all contact with Mohktare and his staff, to change any and all behavior that Mohktare might perceive as hostile or bullying, and that there was no option not to do so.  Thome also consulted with the Regional Security Officer about opening a criminal investigation.  He contacted the Department psychiatrist about Ms. Biliovschi Smith's complaints on at least 5 occasions over the next 3 months.

25.     On April 9, 2015, Thome again called Ms. Biliovschi Smith into his office. Thome did not address Ms. Biliovschi Smith's fears and concerns that Mokhtare had made threats about her.  Thome again accused Ms. Biliovschi Smith of sexual harassment.  Ms. Biliovschi Smith was again extremely distressed.

26.     Concerned about Mokhtare's threats and the Agency's failure to take action to protect her, Ms. Biliovschi Smith did an internet search of Mokhtare in mid-April 2015.  Ms. Biliovschi Smith had previously learned in the Fall of 2014 that Mokhtare had groped a female while in an inebriated state at an Embassy function and that he had to be removed from that event.  When she conducted the internet search in April 2015, Ms. Biliovschi Smith learned that in 2005, the Department's Diplomatic Security Service investigated Mokhtare for sexually assaulting a State Department contractor in Iraq after becoming inebriated.  Ms. Biliovschi Smith also learned that Mokhtare admitted to the 2005 allegations.  Ms. Biliovschi Smith became

extremely distressed, given that Mokhtare had recently threatened her in a drunken phone call to her husband, the State Department never informed her or other women at Post about Mohktare's past history of sexual violence, and the Department allowed him to continue to work for the Agency.

27.     On April 16, 2015, Ms. Biliovschi Smith shared her concerns about Mokhtare with Morrill.  Morrill promised he would share her concerns with Thome.  Morrill then forwarded to Ms. Biliovschi Smith a disturbing news article he discovered after doing his own Internet search about Mokhtare.

28.     After no action was taken by Defendant, Ms. Biliovschi Smith contacted Dr. Chantay White, of the Employee Consultation Services, Office of Medical Services (MED/ECS) on April 23, 2015, and asked for help regarding Mokhtare.  Ms. Biliovschi Smith reported that she was concerned for the safety of herself and other women at Post.

29.     On or about April 24, 2015, MED reported the issue to Diplomatic Security's Office of Special Investigations (OSI).  OSI began an investigation.  Dr. White also instructed Plaintiff to inform the Ambassador at Post, Michael Hoza, and told her that other women had a right to know about Mokhtare.

30.     On April 25, 2015, Ms. Biliovschi Smith told Ambassador Hoza she felt threatened by Mokhtare and wanted actions taken to make sure she was safe.  She also reported that Thome was retaliating against her for reporting Mokhtare's prior sexual misconduct. Ambassador Hoza told Plaintiff to "go have a glass of wine" with her husband and that Mokhtare was "innocent" and "exonerated."  After the call, instead of initiating a harassment investigation as required by Department EEO policy, Hoza instructed Thome to contact the regional

9

psychiatrist again to report the "irrationality of [Ms. Biliovschi Smith's] fears and paranoia."

31.     On April 25, 2015, Ms. Biliovschi Smith contacted EEO Officer Nancy Schmidt-Jones to initiate an EEO complaint.  Schmidt-Jones informed Mokhtare of Ms. Biliovschi Smith's EEO complaint.

32.     On April 30, 2015, Mokhtare stormed into Thome's office to complain about Ms. Biliovschi Smith's EEO activity.

33.     On April 30 and May 3, 2015, Ms. Biliovschi Smith informed Special Agent Clay Proctor, who was assigned to conduct the OSI investigation, that Mokhtare was continuing to stalk her in her work area and in the hallway, was staring at her, and that she was afraid of Mokhtare and he was causing her distress.  Special Agent Proctor never interviewed Mokhtare.

34.     At 8:00 a.m. on May 4, 2015, Ms. Biliovschi Smith contacted a second EEO counselor, Sydnee Hall.  Ms. Hall, who was Thome's office manager, promptly informed Thome about Ms. Biliovschi Smith's EEO complaint.  Thome promptly informed the psychiatrist of Ms. Biliovschi Smith's contact to  EEO, MED, and OSI.

35.     On May 4, 2015, Proctor also informed Thome that he was investigating Mokhtare's threats against Ms. Biliovschi Smith. Within hours of learning of Ms. Biliovschi Smith's EEO complaint, Thome called Ms. Biliovschi Smith for a meeting with Ambassador Hoza to allegedly discuss her "lingering concerns" over Mokhtare's threats.  Instead, even after Ms. Biliovschi Smith reported to Thome that "she felt like [Mokhtare] was stalking her and that she was trying to avoid him in hallways," Thome refused to ban Mokhtare from the 2nd floor where Ms. Biliovschi Smith worked, because he "had an Embassy to run."  However, Thome said he would not oppose Ms. Biliovschi Smith resigning her post if she was still concerned

about Mokhtare.  Thome and Hoza also told Complainant that they would not address her

concerns about Mokhtare's 2005 sexual assault allegations.

36.     On May 5, 2015, Hall suggested that Ms. Biliovschi Smith participate in a

mediation with Mokhtare.  She also suggested that Ms. Biliovschi Smith curtail from Post

instead of pursuing an EEO complaint.

37.     During a May 7, 2015 workplace mediation, Mokhtare stared angrily at Ms.

Biliovschi Smith.  He admitted to making the angry phone call to Mr. Smith on April 3, 2015.

Within hours, Thome issued a written counseling to Plaintiff.  The counseling statement warned

her to "not **circulate Internet stories or make allegations of criminal conduct** about the other

party **to members of the Embassy community or outside the Embassy**."

38.     Ms. Biliovschi Smith informed SA Proctor that the written counseling statement

was retaliatory.  Proctor then informed Thome that he could not impose a "gag order" on an

employee for reporting such concerns.  Proctor instructed Thome to clarify with Ms. Biliovschi

Smith that she was entitled to report such concerns.  Thome informed Ambassador Hoza, who

responded that Ms. Biliovschi Smith needed to see a psychiatrist.  Hoza also instructed Thome

not to provide the clarification that SA Proctor had ordered.

39.     Thereafter, the harassment of Ms. Biliovschi Smith continued. Another manager

interfered with Ms. Biliovschi Smith's work product.  For example, on June 4, 2015, Public

Affairs Officer (PAO) Roberto Quiroz admitted he was purposefully holding back and not

publishing Ms. Biliovschi Smith's official reporting cables.  On other occasions, Quiroz took

credit for Ms. Biliovschi Smith's work and took her name off cables she had drafted.

40.     On June 11, 2015, Thome again emailed Dr. Ross to report that Ms. Biliovschi

Smith had filed an EEO complaint and continued to report to Morrill and others that Mokhtare

was a "stalker" and "sexual predator."  He said he and Ambassador Hoza believed Ms. Biliovschi

Smith was behaving badly and required mental health assistance.  Thome also contacted an

Embassy doctor to "discreetly" push her towards seeing a psychiatrist.

41.     Thome departed from Post in June 2015, but thereafter other managers continued

to retaliate against Ms. Biliovschi Smith.  On August 31, 2015, Ms. Biliovschi Smith informed

Morrill that she wanted to perform the collateral duty of a Post EEO counselor.  In November

2015, Morrill finally responded that as an Eligible Family Member, Ms. Biliovschi Smith was

not eligible for the job, which Morrill later admitted was not true.  In the meantime, another

employee had been selected for the EEO counselor duties.

42.     In September 2015, Quiroz repeatedly yelled at Ms. Biliovschi Smith, and

reminded her that Thome had called her "confrontational." On another occasion, Ambassador

Hoza credited the Embassy's Cultural Affairs Officer for work that Ms. Biliovschi Smith had

done.

43.     These officials also retaliated against Ms. Biliovschi Smith by denying her an

award.  In November 2015, the new DCM, Matthew Smith, nominated Ms. Biliovschi Smith for

a Mission Honor Award.  Quiroz and Morrill, serving on the awards committee, denied Ms.

Biliovschi Smith the award.

44.     In July 2015, DCM Matthew Smith updated Ms. Biliovschi Smith's position

description to include a Top Secret Security Clearance.  Ms. Biliovschi Smith's security

clearance investigation began in September 2015.

45.     In November 2015, after being interviewed by an EEO investigator for Ms.

Biliovschi Smith's formal EEO complaint, Morrill and Ambassador Hoza canceled the formal security clearance investigation for Ms. Biliovschi Smith, but did not tell her that it had been cancelled.

46.     In May 2016, Ms. Biliovschi Smith met with Ambassador Hoza to discuss her position description and the status of the security clearance investigation.  Ms. Biliovschi Smith was informed that her security clearance investigation had been canceled.  During the meeting, Ambassador Hoza referred to Ms. Biliovschi Smith's EEO complaint, implying that she might claim that the clearance cancellation was discrimination based on her national origin or retaliation.

47.     After learning that Ms. Biliovschi Smith's investigation had been canceled, DCM Matthew Smith became concerned that it could "have far reaching implications that would create a negative disruption to [her]work."

48.     The cancellation did cause interference with Ms. Biliovschi Smith's work duties. Without the clearance required of her updated position description, she could not attend essential media-related meetings with DCM Smith, PAO Quiroz, and other media employees at the Embassy, who all had clearances.  Ms. Biliovschi Smith was also prevented from working on a project for a visiting Ambassador because Ms. Biliovschi Smith did not have a clearance.

49.     DCM Matthew Smith informed Ms. Biliovschi Smith that Ambassador Hoza felt that granting Ms. Biliovschi Smith a clearance would be an impediment to her career. Meanwhile, Human Resources informed Ms. Biliovschi Smith that the reasons for the cancellation were purely budgetary. Later, Ms. Biliovschi Smith was informed that her position no longer required a clearance, even though the Position Description said otherwise.

50.     Despite that State Department officials knew that Mohktare had engaged in inappropriate sexual conduct in Iraq in 2005, they permitted him to be assigned to Yaoundé, in a managerial role that required a security clearance, where he harassed Plaintiff and created a hostile working environment for Plaintiff.

51.     Despite Plaintiff's efforts to report Mohktare's harassing behavior, Defendant took no action to discipline Mohktare or remove him from the workplace.  Plaintiff remained terrified and concerned for her safety while continuing to work in the same facility as Mohktare until he departed in or around late October 2015.

52.     Meanwhile, OSI's investigation was wholly inadequate.  OSI never interviewed Mokhtare and never formally interviewed Ms. Biliovschi Smith.

53.     The hostile work environment and retaliatory acts continued until Plaintiff left Post Yaounde in August 2017.

54.     Defendant's conduct, as specified above, violates Title VII in that Defendant discriminated against Plaintiff in the terms and conditions of her employment because of her sex, national origin, and in reprisal for her protected EEO activity and opposition to discriminatory practices.  Because of these violations, Plaintiff has suffered economic injury in that she was denied greater pay when she was denied the SQR of her step level.  In addition, because of the unlawful discrimination and retaliation by Defendant, Plaintiff has suffered and continues to suffer emotional and mental distress, anguish, humiliation, and loss of reputation, all of which have diminished her enjoyment of life and caused her other pain and suffering.

## Count One

### (Pay- National Origin Discrimination)

55.     The foregoing paragraphs are realleged and incorporated by reference here.

56.     Defendant's conduct as alleged above with respect to refusing to process her Superior Qualifications Review constitutes national origin discrimination against Plaintiff in violation of Title VII.  Defendant's stated reasons for why they refused to submit Plaintiff's SQR request were not the true reasons, but instead were pretexts to hide defendant's discriminatory animus.

## Count Two

### (Hostile Work Environment on the basis of National Origin, Gender, and/or Reprisal)

57.     The foregoing paragraphs are realleged and incorporated by reference here.

58.     Defendant's conduct as alleged above created a discriminatory and retaliatory hostile work environment for Plaintiff, based on her national origin, gender, and EEO activity, in violation of Title VII.

59.     Discriminatory intimidation, ridicule, and insult of such severity or pervasiveness altered the terms and conditions of Plaintiff's employment and created an abusive working environment.  Ms. Biliovschi Smith was subjected to a hostile work environment that included being harassed and stalked by a male manager who had previously admitted to sexual misconduct against a State Department contractor, and who had threatened Ms. Biliovschi Smith.

60.     This was followed by a written counseling ordering her not to engage in protected activity, the denial of an award, the refusal to select her for EEO collateral duties, the alteration of her job duties and assignments, and interference with her security clearance investigation.

These retaliatory adverse acts were of such a type that would be likely to chill and deter a federal employee such as Ms. Biliovschi Smith from engaging in protected EEO activity.

Relief Requested

WHEREFORE, Plaintiff requests that the Court award her:

1)   Retroactive adjustment of her step level to FS-06, Step 5, as of March 9, 2015, with all attendant back pay, benefits, interest, and other emoluments of employment;

2)   compensatory damages in an amount sufficient to compensate for the pecuniary and non-pecuniary injuries she has suffered such as but not limited to emotional distress and pain and suffering;

3)  costs and reasonable attorneys' fees incurred in connection with this lawsuit and the underlying administrative proceedings, and

4)  such other damages and relief as is deemed just.

**JURY DEMAND**

Plaintiff requests trial by jury.

/S/ Juliette Niehuss

_____
Cathy A. Harris, Bar No. 467206
Juliette Niehuss, Bar No. 977316
KATOR, PARKS, WEISER & HARRIS, PLLC
1200 18th Street, N.W.
Suite 1000
Washington, D.C.  20036
(202) 898-4800
charris@katorparks.com
jniehuss@katorparks.com

Attorneys for Plaintiff

Date:   December 21, 2018